ROHLMAN v HAWKEYE-SECURITY INSURANCE COMPANY

Docket No. 92675. Argued December 10, 1992 (Calendar No. 10).
 Decided June 29, 1993. Dissenting opinion by Levin, J., filed
 June 30, 1993. Rehearing denied 443 Mich 1206.

Frederick R. Rohlman brought an action in the Oakland Circuit
 Court against Hawkeye-Security Insurance Company and oth-
 ers, seeking personal injury protection and uninsured motorist
 benefits. The plaintiff had been a passenger in a minivan
 registered in Michigan and being driven in Ohio while pulling
 a trailer. The trailer disconnected from the van and over-
 turned, and the plaintiff sustained injuries when, after getting
 out of the van and walking ten to twenty feet back to the
 trailer, he attempted to right the trailer in the center lane of
 the highway and was struck by an unidentified vehicle. The
 court, David F. Breck, J., denied summary disposition for the
 defendants, holding that the plaintiff was an occupant of the
 insured van. The Court of Appeals, Cynar and Wahls, JJ.
 (Reilly, P.J., dissenting), affirmed (Docket No. 112670). The
 insurer appeals.

In an opinion by Justice Brickley, joined by Justices Boyle,
 Riley, Griffin, and Mallett, the Supreme Court held:

The plaintiff was not an "occupant" of the van at the time of
 the accident for purposes of awarding personal injury protec-
 tion benefits. Whether the plaintiff was in physical contact with
 the trailer at the time of the accident and whether the trailer
 was a covered vehicle for purposes of awarding PIP benefits can
 be resolved only after remand to the Court of Appeals and the
 trial court for further proceedings.

1. Where insurance policy coverage is directed by the no-
 fault act and policy language is consistent with the act, a court
 must interpret the language of the statute, rather than that of
 the policy. Because the accident occurred in Ohio, § 3111 of the
 no-fault act directly applies. To recover PIP benefits under
 § 3111, it must be established that the plaintiff was an occupant
 of a vehicle involved in the accident. Section 3111 does not
 recognize entering into or alighting from a vehicle as acts
 separate from occupying a vehicle that would permit recovery
 of personal protection benefits for an out-of-state accident. By
 giving the term "occupant" its primary and generally under-

stood meaning, therefore, the plaintiff was not an occupant of the van because he was not physically inside it when the accident occurred. The courts below did not address whether the plaintiff was an occupant of the trailer for purposes of awarding PIP benefits, rendering the record inadequate for resolution of that issue.

2. Because uninsured motorist benefits are not required by the statute, any claim for such benefits must be based on the policy, which requires that the injury have occurred by accident and have been sustained by a covered person. Although the van was a covered auto, because the issue was not addressed by the Court of Appeals, and because the insurer conceded that the trailer was a covered auto with respect to uninsured motorist benefits and the courts below did not resolve whether the plaintiff was occupying the trailer, remand is required for further factual development.

Reversed and remanded.

Justice LEVIN, joined by Chief Justice CAVANAGH, dissenting, stated that the plaintiff, who was standing with his feet on the ground and whose hands were touching the side of the trailer, was an occupant of and was occupying the vehicle.

While the no-fault act does not define the term "occupant," the policy of insurance specifically provides that in the situation covered by § 3111, an accident occurring outside Michigan, a person occupying a vehicle may recover no-fault benefits. In providing coverage to persons upon, getting in, on, out, or off a vehicle, the policy includes not only persons who are physically in a vehicle when an accident occurs, but also those "on" or "upon" a vehicle. The plaintiff was injured while he was "upon" the van or trailer within the meaning of the word in the policy and as construed in *Nickerson v Citizens Mutual Ins Co,* 393 Mich 324 (1975). The meaning of the word "occupant," as used in the no-fault act and as analyzed in *Royal Globe Ins Co v Frankenmuth Mutual Ins Co,* 419 Mich 565 (1984), is not applicable because the policy provides greater coverage to a person "occupying" a vehicle than is provided to an "occupant" under § 3111.

Whether the plaintiff can recover no-fault benefits should not affect whether he can recover under uninsured motorist coverage. Resolution of that question depends solely on whether he was "occupying" the minivan or trailer within the meaning of the policy. The insurer conceded that the trailer, as well as the van, was a covered vehicle for purposes of the uninsured motorist claim. The construction of "upon" in a similar policy in *Nickerson* surely requires affirmance of the uninsured mo-

torist award. The no-fault award also should be affirmed on the authority of *Nickerson* and the language of the policy enlarging the no-fault coverage to include a person "on" or "upon" an insured vehicle in a situation covered by § 3111, an out-of-state accident.

190 Mich App 540; 476 NW2d 461 (1991) reversed.

*Beier Howlett* (by *Gerald G. White* and *Robert G. Waddell*) for the plaintiff.

*Siemion, Huckabay, Bodary, Padilla & Morganti, P.C.* (by *Thomas M. Caplis* and *Charles A. Huckabay*), for defendant Hawkeye-Security Insurance Company.

*Brandt, Hanlon, Becker, Lanctot, McCutcheon, Schoolmaster & Taylor* (by *A. Randolph Judd*); *Gross & Nemeth*, of counsel (by *James G. Gross*), for defendant-appellee Automobile Club of Michigan.

BRICKLEY, J. In this case the plaintiff victim was struck by a hit-and-run driver in an out-of-state automobile accident while attending to a two-wheel trailer that had become detached from the vehicle he had just exited. The case presents a number of issues, not all of which are sufficiently developed for decision by this Court.

Essentially, plaintiff's recovery of personal injury protection no-fault benefits and uninsured motorist benefits is dependent on an interpretation of the term "occupant" as it appears in the no-fault statute, MCL 500.3101 *et seq.*; MSA 24.13101 *et seq.*, and "occupying" as it is defined in the insurance policy issued by the defendant.[1] This is required because PIP benefits are mandated by the statute, but uninsured motorist coverage is not.

---

[1] While the statute uses the term "occupant" and the insurance policy uses the term "occupying," we do not perceive any intended difference in meaning on the basis of different forms of the word.

We conclude that the term occupant in the no-fault statute is to be construed as we indicated in *Royal Globe Ins Co v Frankenmuth Mutual Ins Co,* 419 Mich 565; 357 NW2d 652 (1984), and that under that literal interpretation, the plaintiff in this case was not an occupant of the automobile at the time of the accident for purposes of awarding PIP benefits.

Because there is evidence that the plaintiff was in physical contact with the trailer at the time of the accident, that issue, along with a peripheral issue whether the trailer was a covered vehicle for purposes of the uninsured motorist insurance, present a closer question that can only be resolved with fuller development on remand.

I

On August 5, 1985, the plaintiff, Frederick Rohlman, was a passenger in a minivan owned by Vicki Stevens, who is not a relative, registered in Michigan, and insured by defendant Hawkeye-Security Insurance Company. Ms. Stevens was driving the van through Ohio, pulling a small two-wheeled trailer that became unhitched, apparently after crossing some railroad tracks. The trailer overturned and came to rest in the center lane of the highway.

Ms. Stevens turned the van around and parked behind the trailer, and the plaintiff then got out of the van and walked ten to twenty feet toward the trailer intending to turn it over on its wheels. After approximately two minutes had passed, while the plaintiff was attempting to right the trailer, an unidentified vehicle struck the trailer and the plaintiff, injuring him severely.

The plaintiff, having no insurance of his own, sought to recover personal injury protection and

uninsured motorist benefits from the defendant insurer, but was denied coverage. Plaintiff filed this declaratory action against Hawkeye on October 21, 1986, and Hawkeye moved for a summary disposition pursuant to MCR 2.116(C)(8) and (10), arguing that the plaintiff was not related to the insured, and that he was not an occupant of either the insured vehicle or the trailer. The trial court denied the motion and, by broadly interpreting the term "occupant," held that the plaintiff was an occupant of the insured van and awarded PIP and uninsured motorist benefits.[2]

The Court of Appeals affirmed, distinguishing the two key cases in this area, *Nickerson v Citizens Mutual Ins Co,* 393 Mich 324; 224 NW2d 896 (1975), and *Royal Globe, supra.* The Court stated that "the former construed the term 'occupying' as used in a private insurance contract, while the latter construed the term 'occupant' as used in the no-fault act. . . . [L]anguage in an insurance policy is to be strictly construed against the insurer. Since policy language is at issue in the instant case, we are bound to follow the holding in *Nickerson.*" 190 Mich App 540, 547, 550; 476 NW2d 461 (1991).

II

In addition to the general issue of the definition of occupant, because of the involvement of the van and the trailer, and because the insurance policy provided uninsured motorist benefits as well as PIP benefits, this case presents a number of more complicated issues that neither the trial court nor the Court of Appeals addressed. PIP benefits are

---

[2] In determining the question of occupancy, the trial court relied on this Court's decision in *Nickerson v Citizens Mutual Ins Co,* 393 Mich 324; 224 NW2d 896 (1975).

mandated by statute under the no-fault act, MCL 500.3105; MSA 24.13105, and, therefore, the statute is the "rule book" for deciding the issues involved in questions regarding awarding those benefits.[3] On the other hand, the insurance policy itself, which is the contract between the insurer and the insured, controls the interpretation of its own provisions providing benefits not required by statute.[4] Therefore, because uninsured motorist benefits are not required by statute, interpretation of the policy dictates under what circumstances those benefits will be awarded.

That being the case, and in light of our conclusion related to the occupancy of the van, a complete analysis of these facts requires consideration

---

[3]   The policy and the statutes relating thereto must be read and construed together as though the statutes were a part of the contract, for it is to be presumed that the parties contracted with the intention of executing a policy satisfying the statutory requirements, and intended to make the contract to carry out its purpose.

A policy of insurance must be construed to satisfy the provisions of the law by which it was required, particularly when the policy specifies that it was issued to conform to the statutory requirement; and where an insurance policy has been issued in pursuance of the requirement of a statute which forbids the operation of a motor vehicle until good and sufficient security has been given, the court should construe this statute and the policy together in the light of the legislative purpose. [12A Couch, Insurance, 2d (rev ed), § 45:694, pp 331-332.]

The definition[s] in an automobile liability insurance policy required by statute, of the motor vehicles covered by it, [are] to be construed with reference to statutes with which it was intended to comply . . . . [Id., § 45:695, p 333.]

We think the same would hold true for no-fault policies.

[4]   A compulsory insurance statute is only concerned with the injured or harmed third persons, and therefore is not concerned with any matters which do not affect liability to such persons. Accordingly, collateral agreements between the insured and the insurer which do not alter the coverage or remedies provided by statute are valid. [Id., § 45:703, p 339.]

of PIP benefits with respect to the van and the trailer, and then of uninsured motorist benefits also with respect to the van and the trailer. The trial court and the Court of Appeals failed to reach the trailer issue or the uninsured motorist benefits issue, presumably because both courts found the plaintiff to be an occupant of the van at least for purposes of PIP benefits.

### A. PIP BENEFITS: THE VAN

The defendant argues at length that § 3111 of the no-fault act applies to the current situation because it concerns accidents occurring out of state:

> Personal protection insurance benefits are payable for accidental bodily injury suffered in *an accident occurring out of this state,* if the accident occurs within the United States, its territories and possessions or in Canada, and the person whose injury is the basis of the claim was at the time of the accident a named insured under a personal protection insurance policy, his spouse, a relative of either domiciled in the same household *or an occupant of a vehicle involved in the accident* whose owner or registrant was insured under a personal protection insurance policy or has provided security approved by the secretary of state under subsection (4) of section 3101. [MCL 500.3111; MSA 24.13111. Emphasis added.]

Neither the Court of Appeals nor the trial court discussed this section in resolving the present case. The plaintiff's brief, without explanation, simply states: "The Court of Appeals was correct in not discussing MCL 500.3111 [MSA 24.13111]. It was not applicable to this lawsuit." We cannot agree.

The basic facts of this case are not in dispute, and it is clear the accident occurred in Ohio. Therefore, § 3111 directly applies, placing its inter-

pretation at issue.[5] A careful reading of § 3111 demonstrates that, in order to recover the plaintiff must establish a number of criteria, only two of which are at issue. The plaintiff must show that he is 1) an occupant 2) of a vehicle involved in the accident.[6] A negative answer to either question would dispose of the issue; however, because the definition of occupant has been the source of many disputes and has caused as many courts to agonize over what that definition should be, we are determined to resolve the confusion.[7]

In *Nickerson, supra,* a pre-no-fault case, the plaintiff was a passenger in an insured automobile operated in Davison, Michigan. The car became disabled, and the occupants, while waiting for assistance, were standing outside of the vehicle. An uninsured vehicle struck the disabled vehicle from behind, pushing it into the plaintiff and causing serious injury. *Id.* at 326. The terms of the disabled vehicle's insurance policy provided the plaintiff with uninsured motorist benefits only if he was "occupying the insured automobile." *Id.* at 328. In interpreting the policy's definition of "occupying": "in or upon or entering into or alighting

[5] The plaintiff argues that §§ 3105 and 3106 apply in this situation and not § 3111. We do not agree. The Legislature has enacted a specific section of the no-fault act that applies to accidents occurring out of state, and it seems evident that this section ought to take priority over other sections that may arguably apply in a collateral manner to the facts of this case.

[6] The plaintiff was not the named insured, nor was he the spouse of, or related to, the named insured. Thus, the only way the plaintiff can recover under § 3111 is to establish himself as "an occupant of a vehicle involved in the accident . . . ."

Section 3111 also requires that the vehicle involved in the accident be insured under a personal protection insurance policy or other approved security. In this case, the van was insured by defendant Hawkeye, and the trailer was insured by defendant Automobile Club of Michigan (ACIA).

[7] Because of our resolution of the occupant issue it is unnecessary to decide whether the van was a vehicle involved in the accident under § 3111.

from," this Court held that the plaintiff, because he was "occupying" the insured vehicle immediately before the accident and because his subsequent injury arose out of its use or repair, was entitled to uninsured motorist protection. *Id.* at 328, 331-332.

While *Nickerson* was based on pre-no-fault law, the occupant issue was raised again in the context of the no-fault act in *Royal Globe, supra.* In that case, the driver stopped in the driveway while his spouse got out of the vehicle and proceeded to walk through the garage to enter the house. When the driver began backing the vehicle into the garage it accidentally accelerated, striking the driver's spouse. The dispute was between two insurance companies to determine which was responsible for paying no-fault benefits. Resolution of the case turned on whether the injured party was an occupant of the vehicle involved in the accident as that term is used in the no-fault act. *Royal Globe* at 567-569.

In holding that *Nickerson* did not control the *Royal Globe* decision, this Court distinguished *Nickerson* in a number of ways—the most significant of which was the simple fact that *Nickerson* was a pre-no-fault act case and, thus, only required an interpretation of the insurance policy.[8] *Id.* at 572-573. We stated:

> It is a familiar and fundamental rule of construction of a private automobile insurance policy that the court's first duty is to determine, from the language used, the apparent intention of the contracting parties, and then to construe doubtful or

---

[8] While the act does not define "occupant" as used in § 3111, the policies in question in *Nickerson* and *Royal Globe* both had definitions of the term materially indistinguishable from the definition given in the Hawkeye policy in the instant case, which is: "in, upon, getting in, on, out or off."

ambiguous terms favorably to the insured and against the insurer as the contract drafter. The language of a statute, on the other hand, is required to be construed by assigning to the words used their primary and generally understood meaning consistent with the apparent intention of the Legislature in enacting the law. [*Id.* at 573. Citations omitted.]

Furthermore, we opined that "if this Court had not found Nickerson to be an occupant of the Parvin vehicle, Nickerson would have had no recovery for his injuries under the insurance policy since the vehicle which caused his injuries was uninsured." *Id.* at 574.

In deciding to follow *Nickerson* in this case, the Court of Appeals failed to acknowledge the significance of the adoption of the no-fault act, which was passed in the time between the *Nickerson* and *Royal Globe* decisions. It also overlooked that by the terms of the no-fault act, essentially all accidents are now covered by personal injury protection benefits or the assigned claims plan. Therefore, the repeal of the uninsured motorist statute and passage of the no-fault act largely eliminated the motivating factors underlying the *Nickerson* decision.[9] See *Bradley v Mid-Century Ins Co,* 409 Mich 1, 52-54; 294 NW2d 141 (1980) (Justice LEVIN writing for the Court), and *Lankford v Citizens Ins Co,* 171 Mich App 413, 420; 431 NW2d 59 (1988).

---

[9] In this case it is true that the plaintiff is also without insurance of his own; however, the result is unique and would only apply in very isolated instances. The plaintiff was out of state when the accident occurred. If the accident occurred in-state he would have been covered by the assigned claims plan of the no-fault act. MCL 500.3172(1); MSA 24.13172(1). Also, the case takes on added importance because, while the factual situation is fairly unique and isolated, the Court of Appeals interpretation of occupant would extend to other provisions of the no-fault act. Affording solicitude to an insured in a private-party contract setting is far different from interpreting a statutory provision that would have ramifications throughout the no-fault act.

Furthermore, we determined in *Royal Globe* that the purposes of the no-fault act would be better served "by the certainty and predictability that a literal construction of the word 'occupant' will yield, when it is assigned its primary and generally understood meaning." *Id.* at 575. Therefore, we reaffirm our decision in *Royal Globe* that our task is to interpret the statute and not the policy. Where insurance policy coverage is directed by the no-fault act and the language in the policy is intended to be consistent with that act, the language should be interpreted in a consistent fashion, which can only be accomplished by interpreting the statute, rather than individual policies.[10]

---

[10] In this case, as in *Royal Globe*, we have a situation in which the policy language provides a definition of occupant different from, and possibly broader than, the no-fault act. However, the issue was not argued by the litigants in *Royal Globe*, nor has it been presented by the parties in this case. In arguing that the policy definition of occupying controls, the plaintiff merely asks us to limit our *Royal Globe* decision to priority disputes between insurance companies and to apply *Nickerson* in those fact-sensitive cases where the plaintiff otherwise would not be entitled to a recovery as proposed by the dissenting opinion.

We emphasize that under the facts of this case and according to the arguments presented by the parties, the statute controls, and we do not deal with the question whether the policy can and, if so, did provide coverage broader than that required by the no-fault act. Although we reserve the issue for a case in which the issue is properly before us, we note the following from Couch, n 3 *supra*, § 45:697, p 334.

> A compulsory insurance statute in effect declares a minimum standard which must be observed, and a policy cannot be written with a more restrictive coverage.
>
> The statute is manifestly superior to and controls the policy, and its provisions supersede any conflicting provisions of the policy.

However,

> [a]lthough an insurer may not by its contract restrict its coverage to less than that required by statute, it may contract for a broader coverage than the statutory liability, as, for

The question is whether, for purposes of PIP benefits, the plaintiff was an occupant of the van, as that term is used in § 3111, when the accident occurred.

At the time of the accident the plaintiff was attempting to right the overturned and disconnected trailer some ten to twenty feet away from the van from which he had departed. As we said in *Royal Globe,* "Whatever her status was after she left the motor vehicle in the street and walked some 60 feet to the rear of the garage where the Pontiac struck her, [she] was 'not an occupant' of the vehicle when she was injured." *Id.* at 576.

Although the no-fault act does not define the terms occupant or occupying, other sections of the act provide guidance in determining its meaning. Subsection 3106(1)(c) of the act states in part:

> Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle unless . . . the injury was sustained by a person while *occupying, entering into,* or *alighting from* the vehicle. [Emphasis added.]

The Legislature expressly recognized that "entering into" and "alighting from" are acts separate from "occupying" a vehicle. See *Royal Globe, supra* at 574, n 5. Section 3111 does not include "entering into" or "alighting from" the vehicle as acts that would trigger personal protection benefits for an out-of-state accident.

By giving the term occupant its primary and

instance, with respect to territory, amount, circumstances of operation, etc., and in such case recovery is measured solely by the policy. The fact that the coverage of the policy may be broader than that required by statute is immaterial, for the contract of the parties may be enforced as written. [*Id.,* § 45:699, p 336.]

generally understood meaning coupled with the above statutory reference, we conclude that the plaintiff was not an occupant of the van because he was not physically inside the van when the accident occurred. We find this interpretation consistent with our *Royal Globe* decision and the intent of the no-fault act.[11]

### B. PIP BENEFITS: THE TRAILER

While the parties mainly base their respective claims on the question whether the plaintiff was an occupant of the van, the plaintiff, albeit briefly, also contends that he was an occupant of the trailer and that the trailer was a "covered vehicle" under the Hawkeye policy covering the van. The trial court and the Court of Appeals did not find it necessary to make a determination whether the plaintiff was an occupant of the trailer because they concluded that he was an occupant of the van.

As far as PIP benefits are concerned, the analysis of whether plaintiff was an occupant of the trailer

---

[11] The dissent would hold that plaintiff was an occupant of and was occupying the van. Justice LEVIN states that he "would adopt the same approach [reading the policy definition of occupant into the no-fault act] in construing the term 'occupant' as used in § 3111." *Post* at 543.

Interestingly, in *Heard v State Farm Mutual Automobile Ins Co,* 414 Mich 139; 324 NW2d 1 (1982), Justice LEVIN used the same type of analysis to hold that a person who was pumping gasoline at a self-service gas station was not an occupant of his vehicle when it was struck by another vehicle. Mr. Heard had not purchased no-fault insurance, and, as a result, he would not have been entitled to PIP benefits under the no-fault act if his vehicle was involved in an accident while he was occupying it. Justice LEVIN held that "[b]ecause Heard's uninsured vehicle was not involved in the accident and he was a pedestrian and not a motorist or occupant of a motor vehicle (or, if one prefers, he was more like a pedestrian than a motorist or occupant), he is as much entitled—under the terms and policies of the no-fault act—to recover from the insurer of the vehicle that struck him as is a pedestrian . . . ." *Id.* at 146 (parenthetical in the original).

is similar to that discussed above with respect to the van. We acknowledge that occupying the trailer is a closer question than occupying the van. However, in addition to the fact that the lower courts did not address this issue, the record is inadequate for its resolution.[12]

In the trial court, Hawkeye argued that the plaintiff should seek recovery from the insurer of the trailer, ACIA. MCL 500.3114(4)(a); MSA 24.13114(4)(a). The trial court held that the trailer was a "covered auto" under Hawkeye's policy for purposes of priority, while also holding that the plaintiff was an occupant of the van. A careful reading of the statute and policy show that this holding was reached without a complete analysis. As we stated above, the statute controls the awarding of PIP benefits, while the insurance policy controls the uninsured motorist benefits. And, just as it is necessary to determine whether plaintiff was an occupant of the van or trailer for purposes of PIP, as well as for uninsured motorist benefits, it is also necessary to provide the same type of analysis regarding the question of "covered vehicle."[13]

---

[12] The record is sparse regarding whether the trailer had the capacity to be occupied. Plaintiff was never in, nor was he attempting to get into, the trailer. Nobody was riding in the trailer, and presumably it was filled with drums, sound and lighting equipment, and dance costumes. Furthermore, the witnesses were inconsistent with respect to the dimensions of the trailer—testimony revealed it was four feet wide, five to eight feet long, and two and one-half to five feet tall.

Additionally, the record is inconsistent with respect to exactly where the plaintiff was when the accident occurred. The medical records state: "This is a twenty-eight year old white male was [sic] brought in by rescue squad. The patient states that he was walking when a car crossed the mid-line. The patient tried to jump out of the way but was hit in the left leg." The plaintiff also told his treating physician that "he was a pedestrian struck by a car." Although the trial court found differently, we note the inconsistencies.

[13] As far as PIP benefits are concerned, § 3111 controls, and it requires that the *vehicle* involved in the accident be *covered* by a

## C. UNINSURED MOTORIST BENEFITS

The trial court also awarded uninsured motorist benefits. Any claim for these benefits must be based on the policy, which requires that the injury have occurred by accident and have been sustained by a "covered person."[14] To be considered a "covered person" the injured party must be the insured, a family member of the insured, or any other person *occupying* the *covered auto.* These questions must be asked with respect to the van and the trailer, and, because we are dealing with uninsured motorist benefits, the policy definitions control.

### 1. THE VAN

As far as the van is concerned, it is obvious that it is a covered auto under the policy; however, because the Court of Appeals did not address this issue, we are left without the benefit of its analysis, and therefore we refrain from deciding the issue at this time.

personal protection insurance policy. See n 6 and accompanying text. It is evident that the van was a *vehicle covered* under Hawkeye's policy. For the trailer, however, the issue is more complex. The statute defines "[m]otor vehicle" as "a vehicle, including a trailer, operated or designed for operation upon a public highway by power other than muscular power which has more than 2 wheels." MCL 500.3101(2)(e); MSA 24.13101(2)(e).

However, the insurance policy contains a different definition of "covered auto." Hawkeye contends that the statute controls for purposes of PIP benefits; however, it does not contest the applicability of the policy definition for purposes of uninsured motorist benefits, which makes the trailer a covered auto for those benefits. The plaintiff argues that the policy definition controls exclusively. The Court of Appeals did not have to deal with this issue because it ended its analysis with the van. We think the parties are entitled to have this issue resolved. (A fact that must be noted when resolving this issue is that ACIA insured the trailer.)

[14] It is not contested that the injury occurred by accident, and therefore that question, as it pertains to the following analysis, will not be discussed.

### 2. THE TRAILER

With respect to the trailer, Hawkeye concedes that it is a covered auto under the policy with respect to uninsured motorist benefits.[15] What is at issue, and what was not discussed by the courts below, is whether the plaintiff was occupying the trailer as the term is defined in the insurance policy. Some of the same concerns that arise here were discussed above, regarding the applicability of the statutory definition of occupant to the trailer for purposes of PIP benefits.[16]

### III

Accordingly, the judgment of the Court of Appeals is reversed, and the matter is remanded to that Court for further proceedings consistent with this opinion. Specifically, the Court of Appeals is ordered to consider:

1) For purposes of PIP benefits, whether Rohlman was an occupant of the trailer and, if so, whether the trailer was a covered vehicle;

2) For purposes of uninsured motorist benefits, whether Rohlman was occupying either the van or the trailer, as it is defined in the Hawkeye policy.

BOYLE, RILEY, GRIFFIN, and MALLETT, JJ., concurred with BRICKLEY, J.

The following opinion was filed with the Clerk of the Supreme Court on June 30, 1993, after the release of the opinion of the Court on June 29, 1993—REPORTER.

LEVIN, J. (*dissenting*). Frederick Robert Rohlman was injured in Ohio in an automobile accident

---

[15] See n 13.

[16] See n 12 and accompanying text.

while attempting to reconnect a trailer that had become unhitched from the named insured's minivan in which he had been riding. The questions presented are whether Rohlman

- was an "occupant" of the vehicle within the meaning of no-fault automobile liability act § 3111,[1] providing no-fault benefits for out-of-state accidents;
- was "occupying" the vehicle within the meaning of the *policy of insurance,* which provided—for *both* no-fault and uninsured motorist purposes—that " '[o]ccupying' means in, upon, getting in, on, out or off."[2]

---

[1] The no-fault automobile liability act provides that where accidental bodily injury is suffered in a state other than Michigan, no-fault benefits may be recovered by the named insured and his "spouse" or a "relative" domiciled in the insured's household or by "an occupant of " the named insured's vehicle "involved in the accident":

> Personal protection insurance benefits are payable for accidental bodily injury suffered in an accident occurring out of this state, if the accident occurs within the United States, its territories and possessions or in Canada, and the person whose injury is the basis of the claim was at the time of the accident a named insured under a personal protection insurance policy, his spouse, a relative of either domiciled in the same household or an occupant of a vehicle involved in the accident whose owner or registrant was insured under a personal protection insurance policy or has provided security approved by the secretary of state under subsection (4) of section 3101. [MCL 500.3111; MSA 24.13111.]

[2] The policy begins with an "agreement" on the part of the insurer with the insured ("[W]e agree with you as follows") immediately followed by definitions, including the following:

> *"Occupying" means in, upon, getting in, on, out or off.* [Emphasis added.]

The *no-fault endorsement* (described in the policy as "personal injury protection coverage endorsement") states:

> The Definitions and General Provisions of the policy *apply unless modified by this endorsement.* [Emphasis added.]

\* \* \*

We would hold that Rohlman was an "occupant" of and was "occupying" the vehicle.[3]

I

The majority states that the "question is whether . . . the plaintiff was an occupant of the van, as that term is used in § 3111,"[4] concerning accidents occurring out of state,[5] and concludes "that the plaintiff was not an occupant of the van because he was not *physically inside the van* when the accident occurred."[6] (Emphasis added.)

A

The circuit judge awarded Rohlman no-fault benefits of $16,330 for medical expense and $8,400

We do not provide Personal Injury Protection Coverage for bodily injury:

\* \* \*

3. Sustained by any person while *not occupying an auto if the accident takes place outside Michigan.* However, this exclusion does not apply to:
  a. you; or
  b. any family member.

[3] Hawkeye concedes that the trailer, as well as the van, was a covered vehicle for purposes of the "uninsured motorist claim":

The trial court below found that the trailer involved in the accident qualified as "your covered auto" because it was a temporary substitute. Hawkeye does not dispute that finding as it applies to the uninsured motorist claim.

This concession leaves open the question whether the trailer was covered by the Hawkeye policy for no-fault benefits. The trailer appears to have been covered by a policy issued by Automobile Club of Michigan to the mother of the owner of the insured minivan involved in the accident.

[4] *Ante,* p 531.
[5] See n 1.
[6] *Ante,* p 532.

for work loss, and $20,000 under the uninsured motorist coverage.[7]

The no-fault award, totaling $24,730, presents an issue of statutory construction concerning the meaning of the term "occupant" as used in § 3111. The $20,000 uninsured motorist award presents an issue of contract construction concerning the meaning of the term "occupying" as used in the policy of insurance.

## B

The policy of insurance specifically provides that in the situation covered by § 3111, an accident occurring outside Michigan, a person "occupying" the vehicle may recover no-fault benefits.[8]

The term "occupant" is not defined in § 3111 or elsewhere in the no-fault automobile liability act. The term "occupying" is defined in the policy to include not only a person physically "in" a vehicle, but also one who is "on" or "upon" a vehicle.

Rohlman was injured while he was "upon" the van or trailer within the meaning of that word in the policy as construed by this Court in *Nickerson v Citizens Mutual Ins Co*, 393 Mich 324; 224 NW2d 896 (1975),[9] a pre-no-fault case. Nickerson was

---

[7] The uninsured motorist provision of the Hawkeye policy of insurance states:

"Covered person" as used in this Part means:
1. You or any family member.
2. Any other person occupying your covered auto.
3. . . . .

[8] See n 2.

[9] The majority states:

[T]he repeal of the uninsured motorist statute and passage of the no-fault act largely eliminated the motivating factors underlying the *Nickerson* decision. See *Bradley v Mid-Century Ins*

injured when the vehicle he was standing next to was struck by an uninsured motorist. He, like Rohlman, had left the vehicle because of a vehicle-oriented incident during the journey. Rohlman was injured within two minutes of the time that the trailer became detached from the van, and within ten to twenty feet of the van. His hands and body were literally "on" and "upon" the trailer, which, until it became detached, had been hitched to the van.

Courts generally construe the "on" or "upon" language to include a person who leaves a vehicle before the termination of the journey, intending to resume occupancy of the vehicle, and who is injured, within a reasonable geographic perimeter of the vehicle, while servicing the vehicle or engaging in other "vehicle-oriented" conduct. See part II.

C

The analysis in the post-no-fault case, *Royal Globe Ins Co v Frankenmuth Mutual Ins Co,* 419 Mich 565; 357 NW2d 652 (1984), concerning the meaning of the term "occupant" as used in the no-

---

*Co,* 409 Mich 1, 52-54; 294 NW2d 141 (1980) (Justice LEVIN writing for the Court), and *Lankford v Citizens Ins Co,* 171 Mich App 413, 420; 431 NW2d 59 (1988). [*Ante,* p 529.]

The question in *Bradley* was the enforceability of an "other insurance" clause. Nothing in *Bradley* supports the argument that the passage of the no-fault act "largely eliminated the motivating factors underlying the *Nickerson* decision." *Nickerson* relied on authority in other jurisdictions construing "upon" and, as appears from part II, was well supported by a plethora of authority in other jurisdictions. The analysis in the out-of-state cases was not based on whether there was a statute mandating uninsured motorist coverage, and continues to be sound without regard to whether uninsured motorist coverage is mandated by statute, or the passage of no-fault statutes.

Although injured persons are now entitled to no-fault benefits, insurers continue to sell uninsured motorist coverage, and insurers generally continue to define, in their policies, "occupying" as including injuries suffered "on" or "upon" a vehicle.

fault act, is not applicable in the instant case
because the policy of insurance provides greater
coverage to a person "occupying" a vehicle than is
provided to an "occupant" under § 3111, as that
term is being construed by this Court.

Courts generally hold that a policy of insurance
may provide greater coverage than is statutorily
mandated.[10] The majority concludes that the ques-
tion whether the policy definition of "occupying"
was broader than the term "occupant" as used in
§ 3111 of the no-fault act was not "presented by
the parties, the statute controls, and we do not
deal with the question whether the policy can and,
if so, did provide coverage broader than that re-
quired by the no-fault act."[11] We would not read
the presentations of the parties so narrowly.

D

The majority is quite insistent on a literal read-
ing of the term "occupant" as used in § 3111. It
avoids deciding whether the Hawkeye policy pro-
vides coverage broader than is required by the no-
fault act, and thus need not decide whether to
follow the same literal construction approach to
provide no-fault coverage for Rohlman under the
circumstances that (i) the *no-fault endorsement* in
the policy of insurance specifically provides no-
fault coverage to a person who is "occupying an
auto if the accident takes place outside Michi-
gan,"[12] (ii) the "definitions" of the policy, including
the definition of "occupying," apply to the no-fault

[10] 12A Couch, Insurance, 2d (rev ed), § 45:699, p 336, quoted *ante,* p
530, n 10.

[11] *Ante,* p 530, n 10.

[12] The exact language is the converse: no-fault coverage is not
provided where the injury is "[s]ustained by any person while not
occupying an auto if the accident takes place outside Michigan." See
n 2.

endorsement, (iii) "occupying" is defined to provide "on" or "upon" coverage; (iv) this Court in *Nickerson*, a factually similar case, ruled that there was coverage under the "upon" language.[13]

E

The question whether Rohlman can recover under the uninsured motorist coverage should not be affected by the majority's decision not to decide the question whether Rohlman can recover no-fault benefits under the no-fault endorsement of the policy defining "occupying" to include an injury suffered "upon" the vehicle. Resolution of the question whether Rohlman can recover under the uninsured motorist coverage depends solely on whether he was "occupying" the minivan *or* trailer within the meaning of the policy. The answer to that question does not turn at all on legislative intent, but rather on a construction of the policy.

This Court's analysis in *Nickerson*, construing the "upon" language in a similar insurance policy, surely requires affirmance of at least the $20,000 uninsured motorist award to Rohlman. In *Nickerson*, the vehicle in which Nickerson was riding stalled on the highway, and he helped push it to . the side of the road before reëntering it. A passing motorist stopped, and Nickerson again left the vehicle and walked to the front of the vehicle. An uninsured vehicle then struck the insured vehicle.

In the instant case, an uninsured vehicle struck

---

[13] Hawkeye concedes that the trailer was a covered auto for uninsured motorist coverage.

We see no need to decide whether the trailer was a covered auto for no-fault purposes because the accident occurred within a "reasonable geographic perimeter," see *Robson v Lightning Rod Mutual Ins Co*, 59 Ohio App 2d 261; 393 NE2d 1053 (1978), and accompanying text—ten to twenty feet—of the van to which the trailer had been hitched, and the van clearly was a covered auto for no-fault purposes.

the trailer that Rohlman was attempting to right. The factual circumstances are almost identical to Nickerson. Hawkeye has conceded that the trailer was a "covered auto" for uninsured motorist purposes.

There is no need or justification for remand to the Court of Appeals concerning the applicability of the uninsured motorist coverage.

F

We would thus affirm the $20,000 uninsured motorist award on the authority of Nickerson. We would also affirm the $24,770 no-fault award on the authority of Nickerson and the language of the policy enlarging the no-fault coverage to include a person "on" or "upon" the insured vehicle in the very situation covered by § 3111, an out-of-state accident. Rohlman's conduct was vehicle oriented; he was "on" or "upon" the van within the meaning of those words as construed by this Court in Nickerson and by courts in at least eighteen other jurisdictions, even though he was ten to twenty feet from the van when the accident occurred.

G

The majority's bright-line approach, building on Royal Globe and concluding that the term "occupant" requires that the injured person have been "physically inside" the vehicle, will tend to eliminate priority disputes between insurers under §§ 3114[14] and 3115[15] of the no-fault act.

A number of courts have assimilated the jurisprudence developed in the construction of "on" and "upon" in the medical expense and uninsured motorist endorsements (see part II) when constru-

[14] MCL 500.3114; MSA 24.13114.
[15] MCL 500.3115; MSA 24.13115.

ing the term "occupant" or "occupying" as used in their no-fault laws.[16] We would adopt the same approach in construing the term "occupant" as used in § 3111. The failure to do so may transfer to Michigan taxpayers the cost of providing medical and long-term care for Michigan residents seriously injured in vehicle-oriented out-of-state accidents; this the Legislature did not intend.

## II

The automobile insurance policy language, providing that "occupying" means "in, upon, getting in, on, out or off," has been a feature of automobile policies before the enactment of no-fault laws. The language precedes the uninsured motorist endorsement.

This language generally has been construed to provide medical expense[17] and uninsured motorist coverage[18] to persons who are not physically in a vehicle when an accident occurs where, as in the instant case, the injured person physically occupied the insured vehicle before the accident, the accident occurred shortly after the injured person ceased physically to occupy the vehicle, the egress of the injured person from the vehicle occurred during a journey, not at the termination of the journey, the injured person left the vehicle because of an emergency necessitating servicing or other "clearly vehicle-oriented" conduct, and the injured person intended to resume occupancy as soon as possible.[19]

At least eighteen jurisdictions have so construed the words "on" or "upon."

---

[16] See part II(C).

[17] See part II(A).

[18] See part II(B).

[19] King, No-Fault Automobile Accident Law, § 6.14, p 296.

A

The "on" or "upon" language appears to have been first construed by courts in deciding whether medical expense payments coverage was applicable. About forty-five years ago, in *Madden v Farm Bureau Mutual Automobile Ins Co,* 82 Ohio App 111; 37 Ohio Op 456; 79 NE2d 586 (1948), the insured had *changed a tire* and was injured when struck by another vehicle while he was placing the removed tire in the trunk. The Ohio Court of Appeals rejected the insurer's argument that the injured person was not "in" or "upon" or "alighting" or "entering" the vehicle when he was injured, and awarded medical expense.[20]

Soon thereafter, in *Lokos v New Amsterdam Casualty Co,* 197 Misc 40, 41; 93 NYS2d 825 (1949), the injured person recovered medical expense where the bumper of his automobile had fallen to the pavement and was hanging on one side. He was injured in the act of *tying the bumper so he could proceed on his journey,* "while he was leaning over the car with the bumper in his hands . . . ."[21]

---

[20] The court said that the insured was standing behind the vehicle, "touching or almost touching it and leaning forward with the upper part of his body and arms within the rear compartment," when he was struck by another automobile.

In *Green v Farm Bureau Mutual Automobile Ins Co,* 139 W Va 475; 80 SE2d 424 (1954), recovery was denied to a driver who *injured himself* as he attempted to change a tire. When the tire jack collapsed, causing the wheel drum to crush his arm, the claimant had no physical connection to the vehicle, as required by the medical benefits provision of his insurance policy.

[21] The court focused on the word "upon" and asked:

Can it be said that the insurer attached to the word "upon" a meaning so narrow as to encompass only such cases in which the entire weight of a person's body was resting upon or supported by the vehicle? Considering the usual positions of a person in relation to a car in use and the fact that other enumerated risks include acts of being upon the automobile in

The Supreme Court of Rhode Island, in *Sherman
v New York Casualty Co,* 78 RI 393; 82 A2d 839
(1951), held that the words "in or upon" should be
given a broad and liberal construction and the
plaintiff recovered medical expense.[22]

A California appellate court awarded medical
expense to a person struck by an automobile when
*changing a wheel* where the policy provided
"upon" coverage. *Christoffer v Hartford Accident
& Indemnity Co,* 123 Cal App 2d 979; 267 P2d 887
(1954). The court said that the injured person was

> "upon the automobile" as the term is employed in
> the policy, just as a fly is said to be "upon the
> wall" or "upon the ceiling," or a painter is said to
> be "upon the wall," a person to be "upon a raft"
> although only supported by the hand, or as a
> baseball player (the runner) is said to be "upon the
> base" if any portion of his body is in contact with
> the bag. [*Id.,* pp 982-983.]

Rohlman was standing with two feet on the
ground, facing the side of the trailer and with both
of his hands on it.[23]

An Illinois appellate court awarded medical ex-
pense to an insured who, after becoming involved
in a two-car accident, was injured when struck by
a third vehicle *as he was returning to his vehicle
after exchanging information with the driver of
the second vehicle. Wolf v American Casualty Co*

---

the sense of resting upon or being supported by it, it is reason-
able to give the term a broader meaning including some acts in
which the person is in contact with the car. [*Id.,* p 42.]

[22] The insured had reached his destination. After leaving the auto-
mobile, he noticed it was rolling backward. In an attempt to stop the
vehicle, he held onto the taillight and registration plate, and then he
*put his knee on the bumper* and was injured when the vehicle hit a
wall.

[23] See n 3.

*of Reading, Pa,* 2 Ill App 2d 124; 118 NE2d 777 (1954).[24]

## B

Building on the medical expense cases, this Court in *Nickerson,* and courts in other states, construed the "on" or "upon" language in the context of the uninsured motorist endorsement.

The Arizona Court of Appeals, in *Manning v Summit Home Ins Co,* 128 Ariz 79; 623 P2d 1235 (1980), allowed recovery under the uninsured motorist endorsement where the person was injured when he *removed the chains from the trunk of the vehicle* and began straightening them so that the chains would be better positioned to put on the rear tires. The court said:

> In our opinion, the better reasoned cases indicate that if one's activities are in such *close proximity to the car and so related to its operation* and use that they are an integral part of one's occupancy and use of the car, then one may be said to be "upon" the car. [*Id.,* p 82.]

Similarly, see *Cocking v State Farm Mutual Automobile Ins Co,* 6 Cal App 3d 965, 971; 86 Cal Rptr 193 (1970), where a California appellate court said:

> Under the agreed facts it is also evident that

---

[24] The court said:

> As related to the instant case, it is the use of the word "upon" which creates an ambiguity. It cannot mean that the insured, to be within the meaning of the clause, had to be couched on the roof of the car or on the running board or sitting on the hood. It must connote some physical relationship between himself and the car that enlarged the area defined by the words "entering or alighting" and the word "in." [*Wolf, supra,* p 130.]

plaintiff was performing an act physically and directly related to the car. *Since plaintiff was traveling under highway conditions requiring tire chains, his acts of stopping the vehicle to put chains on, and of undoing the bag containing the chains while in close proximity to the car,* clearly suggest his intent to place those chains on the car's tires. Accordingly, we hold that plaintiff's position preparatory to placing the chains on the tires of the car put him in the requisite physical relationship to the car. His injury while in that position, therefore, occurred while he was "using" the car and while he was "upon" the Volkswagen within the meaning of the policy and [the statute]. [Emphasis added.]

The Supreme Court of Montana, in *Sayers v Safeco Ins Co of America,* 192 Mont 336; 628 P2d 659 (1981), held that an insured could recover under the uninsured motorist coverage of *his vehicle* when he was injured while under the hood of *another vehicle parked ten to twelve feet in front of his vehicle to facilitate the use of his vehicle's battery and jumper cables.* The court said:

> *The "physical contact" test for determining whether one is an occupant is not determinative under Montana law. This Court has developed a "reasonable connection" test.* The issue here is whether Sayers' activities at the time of the injury were so reasonably connected to the Galetti vehicle that, under the law, Sayers could be said to be an occupant within the policy's meaning.
>
> \* \* \*
>
> Sayers rode in the Galetti vehicle for the single purpose of jump-starting the disabled car using Galetti's battery. His attempted assistance was undeniably dependent upon and thus reasonably connected to the Galetti vehicle. [*Id.,* pp 338-339. Emphasis added.]

This Court rejected the "physical contact" test in *Nickerson, supra,* p 331.

In *Pope v Stolts,* 712 SW2d 434 (Mo App, 1986), the Missouri Court of Appeals held that a person leaning over the engine of an automobile, with his stomach against its grill and his knees against its bumper, was an occupant of the vehicle. Pope was assisting his neighbors in *jump-starting their dis-. abled automobile* when he was struck by an uninsured motorist. After holding that Pope was not an occupant of either of two other cars (one of which was his own) parked on the shoulder near the disabled vehicle, the court held that Pope was sufficiently "upon" the disabled vehicle to be considered an occupant.

The Kentucky Court of Appeals, in *Kentucky Farm Bureau Mutual Ins Co v Gray,* 814 SW2d 928 (Ky App, 1991), allowed uninsured motorist recovery for a person who had stopped to assist disabled motorists, and was injured after removing the battery from his own vehicle and *jump starting the disabled vehicle.* The Court decided that the injured person was "upon" his vehicle in the sense of the policy language.

In *Michigan Mutual Ins Co v Combs,* 446 NE2d 1001 (Ind App, 1983), the Indiana Court of Appeals determined that a person injured while leaning into the rear compartment of a vehicle, *repairing the engine,* was an occupant of the vehicle although he had not been riding in the vehicle before it broke down and did not intend to ride in the insured vehicle after it was repaired. The court focused on the relationship between the claimant and the vehicle in determining that he was "upon" the vehicle in the sense of the policy language.

The Texas Court of Appeals in *Hart v Traders & General Ins Co,* 487 SW2d 415 (Tex Civ App, 1972),

held that a person injured while changing a *vehicle's fuel pump* was "upon" the vehicle and therefore an occupant of the vehicle for purposes of the uninsured motorist coverage.

Uninsured motorist recovery was allowed by the Ohio Court of Appeals, where a passenger was injured while *placing a stereo in the open trunk* of a vehicle. The court said:

> In construing uninsured motorist provisions of automobile insurance policies which provide coverage to persons "occupying" insured vehicles, the determination of whether a vehicle was occupied by a claimant at the time of an accident should take into account the *immediate relationship the claimant had to the vehicle, within a reasonable geographic perimeter.*[25] [Emphasis added.]

The Wisconsin Supreme Court allowed uninsured motorist recovery to *a person injured while waiting to enter an automobile, which had just pulled up to the curb.* The court said that it adopted a test that:

> considers whether the *party was vehicle-oriented or highway-oriented at the time of the injury.* The vehicle orientation test considers the nature of the act engaged in at the time of the injury and the intent of the person injured. . . . To these two considerations we add a third: whether the injured person was within the *reasonable geographical perimeter* of the vehicle.[26] [Emphasis added.]

The Minnesota Court of Appeals, in *Klein v*

---

[25] *Robson,* n 13 *supra,* p 261, headnote.

Similarly, the Court of Appeals of Oregon held that a person injured while removing a packaged gift from her trunk was an occupant of her vehicle. *Mackie v Unigard Ins Co,* 90 Or App 500; 752 P2d 1266 (1988).

[26] *Kreuser v Heritage Mutual Ins Co,* 158 Wis 2d 166, 173; 461 NW2d 806 (Wis App, 1990).

*United States Fidelity & Guaranty Co,* 451 NW2d
901, 903-904 (Minn App, 1990), allowed uninsured
motorists recovery for a person struck while
*changing a tire on his vehicle.* The court said:

> Other jurisdictions have liberally construed "oc-
> cupying" to refer to a *reasonable geographic per-
> imeter* around a vehicle or a continuing relation-
> ship between a vehicle and the claimant. [Empha-
> sis added.]
>
> * * *
>
> At the time of his injury, a continuing relation-
> ship existed between Klein and his vehicle; he was
> changing the tire for the purpose of resuming his
> trip.

Other courts have also held that persons in-
volved in *ongoing journeys* have sufficient connec-
tion to their vehicles to recover uninsured motorist
benefits. In *In re Nassau Ins Co,* 103 AD2d 780;
477 NYS2d 415 (1984), a taxicab driver was in-
jured as he was *exchanging insurance information*
with the driver of a second vehicle, with which he
had just collided. A third vehicle struck the second
vehicle, propelling it into the two drivers. In hold-
ing that the taxicab driver was an occupant of his
vehicle, New York's intermediate appellate court
said:

> "Where a departure from a vehicle is occasioned
> by or is incident to some *temporary interruption*
> in the journey and the occupant remains in the
> immediate vicinity of the vehicle and, upon com-
> pletion of the objective occasioned by the brief
> interruption, he intends to resume his place in the
> vehicle, he does not cease to be a passenger."[27]
> [Emphasis added.]

[27] *Id.,* p 780 (quoting *In re Rice v Allstate Ins Co,* 32 NY2d 6; 342
NYS2d 845; 295 NE2d 647 [1973]).

Pennsylvania's intermediate appellate court, in *Contrisciane v Utica Mutual Ins Co,* 312 Pa Super 549; 459 A2d 358 (1983), allowed uninsured motorists recovery for the family of a driver killed while coöperating in the *preparation of a police accident report.* The driver was standing next to the police car, *approximately ninety-seven feet from his own vehicle,* when he was struck and killed by an uninsured motorist. The Pennsylvania Superior Court determined that the decedent was an occupant of his vehicle, under the "vehicle oriented/ highway oriented" test because his vehicle remained on the highway and his passenger remained in the vehicle. *Id.,* p 554.

Similarly, in *White v Williams,* 563 So 2d 1316 (La App, 1990), the Court of Appeals of Louisiana allowed uninsured motorist recovery for a person injured in *the traffic lane of a service station as he walked from the cashier to his vehicle,* which was parked in the outside lane of the pump island, after paying for gasoline. The court adopted the trial court's findings:

> [P]laintiff had never abandoned his relationship as passenger of the insured vehicle. His physical departure was solely for the purpose of performing an act that was physically and directly related to the car. He never turned aside from this mission and was in fact in the process of resuming his physical contact with the vehicle when injured. [*Id.,* p 1318.][28]

In *DeStefano v Oregon Mutual Ins Co,* 762 P2d 1123 (Utah App, 1988), the Utah Court of Appeals

---

[28] Under similar facts, coverage was denied to an injured party seeking to be deemed *an occupant of the car that hit him* in the service station, as opposed to his own vehicle. The court ruled that a claimant must have some prior connection with the injuring automobile before occupancy status can be established. *Hollingworth v American Guarantee & Liability Ins Co,* 105 RI 693; 254 A2d 438 (1969).

allowed a driver to recover uninsured motorists
benefits for injuries suffered as he *poured gasoline*
into his disabled vehicle on the side of the high-
way.[29]

Most recently, the Supreme Court of Tennessee
allowed uninsured motorist recovery for a person

---

[29] An uninsured motorist struck the vehicle assisting DeStefano,
propelling that vehicle into DeStefano and his vehicle. The court held
that *"plaintiff had every intention of immediately resuming his
journey"* and that his *"actions [suggested] a course of conduct reason-
ably incidental to being 'in, upon, or entering into' the vehicle." Id.,* p
1126. (Emphasis added.)

Courts have also allowed recovery in circumstances where the
connection to the vehicle is not related to transportation purposes.
The California Court of Appeals held that a person *standing in the
street, next to a parked car and in conversation with its driver, was
an occupant of his own vehicle, two parking spaces away* when he was
hit by an uninsured motorist. *Utah Home Fire Ins Co v Fireman's
Fund Ins Co,* 14 Cal App 3d 50; 91 Cal Rptr 781 (1970). The New
Jersey Supreme Court allowed recovery under the uninsured motorist
provision of two insurance policies for injuries suffered by a person
leaning on the roof and door of a vehicle while conversing with the
vehicle's driver. *Mondelli v State Farm Mutual Automobile Ins Co,*
102 NJ 167; 506 A2d 728 (1986). The court determined that the
injured party's connection to the insured vehicle was not coincidental,
because he had repaired the vehicle earlier in the day and the
conversation at the time of the collision concerned, in part, the
owner's reaction to the sound of the repaired engine. The court
expressed concern over the potentially narrow construction of policy
language that could severely abridge the purposes of uninsured
motorists coverage. It quoted the following passage from the opinion
of a dissenting appellate division judge:

"Many situations could arise where a person might be 'upon'
the vehicle lawfully, although not 'immediately' using it or
intending to use it for transportation, for example, repairing it,
lashing baggage to the top of the vehicle even though it was
not intended to be used that particular day or perhaps by that
person as a means of transportation. Someone could even be
sleeping in an automobile (an occupant in that car) in a
parking lot, rest area or campground and an uninsured motor-
ist could collide with the vehicle injuring its occupant. Al-
though the insured in such a case would be 'in' the automobile,
under the majority opinion it could be argued by a disclaiming
insurer where another policy's [uninsured motorist] provision
might be implicated that the automobile was not being or about
to be immediately used as a means of transportation." [*Id.,* p
172.]

*who stopped to assist a disabled motorist* and was crushed between his own automobile and the disabled vehicle when a third vehicle struck the disabled vehicle. *Tata v Nichols,* 848 SW2d 649 (Tenn, 1993). After reviewing numerous authorities, the court said that the "cases indicate the relationship contemplated, but they also demonstrate that 'upon' has no precise meaning except in the context of particular facts." *Id.,* p 653.

In *Estate of Cepeda v United States Fidelity & Guaranty Co,* 37 AD2d 454; 326 NYS2d 864 (1971), New York's intermediate appellate court determined that stepping out of an automobile is not, alone, determinative of occupant status. The decedents were passengers in an automobile that became involved in an accident on the highway. They left the vehicle, and were *walking to the rear of the vehicle to look for damage* when they were struck by an oncoming motorist. The New York court said:

> Not every physical departure from the vehicle results in termination of status as a passenger. Where the departure is incident to some temporary interruption in the journey of the vehicle, as when there is a mechanical failure and the passenger gets out to help or even to observe the work of the driver, he does not cease to be a passenger. The situation here is indistinguishable. Where the passenger alights following some temporary interruption at a place other than his destination, *remains in the immediate vicinity* of the vehicle and there is every reason to believe that, had it not been for the accident, he would shortly have resumed his place in the vehicle, his status as a passenger has not changed. [*Id.,* pp 455-456. Emphasis added; citations omitted.]

The focus on the relationship between the vehicle and the claimant supports the conclusion that

leaving a vehicle does not automatically terminate one's status as an occupant or passenger. In *Asnip v Hartford Accident & Indemnity Co,* 446 So 2d 1121 (Fla App, 1984), the Florida District Court of Appeals allowed recovery of both no-fault and uninsured motorists benefits to a driver injured while conversing with his friend on the side of the road. Asnip had been following a friend when the friend's *vehicle broke down.* He pulled over to the shoulder after his friend, and the two were discussing the breakdown when a third vehicle struck them. The court determined, as a matter of law, that the injured motorist was an occupant of his vehicle.

Courts have denied recovery when the injured party's connection to the vehicle was merely coincidental.[30]

---

[30] In *Ferguson v Aetna Casualty & Surety Co,* 369 SW2d 844 (Tex Civ App, 1963), a Texas appellate court denied recovery to a woman who was injured when she *slipped in the mud* as she attempted to traverse a parking area, although she had grabbed the door handles of a nearby automobile. The claimant's only connection with the vehicle was her attempt to use it as a support along the treacherous pathway.

Courts have also denied recovery when the journey in which the injured passenger had participated had come to an end before the injury. In *Government Employees Ins Co v Keystone Ins Co,* 442 F Supp 1130 (ED Pa, 1977), an automobile passenger left the vehicle in which he was riding, approached a second (uninsured) vehicle, jumped on its hood for the purpose of starting a fight, and was injured when the driver of the second vehicle accelerated suddenly. The court concluded that "the only connection between [the passenger] and the Murray vehicle at the time of the injury was that [the passenger] had been riding in that vehicle when he decided to assault the person who subsequently injured him." In *Colonial Penn Ins Co v Curry,* 157 Misc 2d 282; 596 NYS2d 317 (1993), the court denied recovery to a person who sought to be covered solely because he was leaning on a truck with one foot resting on its running board when the truck was struck by another vehicle. Curry had no other connection to the vehicle—he had not been a passenger in the vehicle, he was not about to become a passenger in the vehicle, he was not entering or alighting from the vehicle. The court held that Curry's connection with the vehicle, which was "unrelated to its operation as a vehicle and not passenger-oriented," was insufficient to establish the status of "occupant." *Id.,* 596 NYS2d 321.

C

The approach adopted by this Court in *Nickerson,* and by the courts in other jurisdictions in construing the "on" or "upon" policy language in the context of medical expense and uninsured motorist coverage, has also been adopted by a number of courts in construing their no-fault acts.

No-fault benefits were denied by the Florida Court of Appeals in *Industrial Fire & Casualty Insurance Co v Collier,* 334 So 2d 148, 149 (Fla App, 1976), because the injured person, who was struck while standing outside the vehicle with it jacked up, removing the spare tire, had not insured the vehicle, and no-fault benefits were not payable under Florida law to an owner while "occupying"—defined to mean "in or upon, or entering into, or alighting"—an uninsured owned vehicle.

No-fault benefits were payable to persons injured in a service station when the radiator blew up when the attendant added water. The New Jersey Superior Court said:

> Important to the determination of this problem is the fact that Fountain *had not reached his destination at the time of the accident.* The stop at the gas station was incidental to the purpose of the trip. After the attendant serviced the car Fountain *would have returned* to the vehicle interior. To hold the status of Fountain as "occupant" changed because he exited for a brief moment would be to defeat the intent of the statute. Fountain at the time of the accident enjoyed the *status of "occupant" and is entitled to no fault benefits.* [*Newcomb Hosp v Fountain,* 141 NJ Super 291, 295; 357 A2d 836 (1976). Emphasis added.]

In *Tyler v Ins Co of North America,* 311 Pa Super 25; 457 A2d 95 (1983), the injured person

had alighted from the bus, but had not reached the shoulder of the road. In awarding no-fault benefits, the Superior Court of Pennsylvania said:

> In general, it can be said that a person who is alighting from a vehicle is still an occupant thereof. He continues to "occupy" the motor vehicle until he severs all connection with it. *That point of severance is reached when he becomes highway oriented as opposed to being vehicle oriented. Until then, the alighting passenger continues to be an occupant of the bus.* Until such a person is on his or her own without reference to the bus, the person has not ceased to be a passenger or occupant. [*Id.,* p 31. Emphasis added.]

In *McGilley v Chubb & Son, Inc,* 369 Pa Super 547; 535 A2d 1070 (1987), the Pennsylvania Superior Court held that a taxicab driver who was struck by a bus as he leaned on another cab while "bumming" a cigarette was not an occupant of his taxicab for no-fault purposes. The taxicab driver had been sitting in his parked vehicle for approximately twenty minutes. He left his vehicle and stopped at the cab in front of his to "bum" a cigarette. He testified that he intended to ask a friend if he wanted coffee, to go to a newsstand, and then meet his partner and exchange the cab for his partner's vehicle. The court determined that McGilley was not vehicle oriented, but rather was highway oriented at the time of the collision.

III

In *Heard v State Farm Mutual Automobile Ins Co,* 414 Mich 139; 324 NW2d 1 (1982), the injured person sought to recover no-fault benefits for injuries suffered when he was struck by an automobile while he was pumping gasoline into a vehicle

owned by him. The question presented was whether he should be denied no-fault benefits because he was the owner of an uninsured "motor vehicle *involved* in the accident."[31]

This Court held that Heard was entitled to no-fault benefits and said:

> [A] parked vehicle is not "involved in the accident" unless one of the exceptions to the parked vehicle provision (§ 3106) is applicable. Those exceptions spell out when a parked vehicle is deemed to be in use as a motor vehicle; "[e]ach exception pertains to injuries related to the character of a parked vehicle *as a motor vehicle*—characteristics which make it unlike other stationary roadside objects that can be involved in vehicle accidents." *Miller v Auto-Owners Ins Co,* 411 Mich 633, 640; 309 NW2d 544 (1981). (Emphasis supplied.)
> At the time of the accident, Heard's vehicle was not in use as a motor vehicle; rather, it was like "other stationary roadside objects that can be involved in vehicle accidents." Heard was entitled to PIP benefits from State Farm. § 3115(1)(a). [*Id.,* pp 144-145.]

In the opinion, this Court used the term "occupant" in the following passage:

> Because Heard's uninsured vehicle was not involved in the accident and he was a pedestrian and not a motorist or occupant of a motor vehicle (or, if one prefers, he was more like a pedestrian than a motorist or occupant), he is as much entitled—under the terms and policies of the no-fault act—to recover from the insurer of the vehicle that struck him as is a pedestrian or motorcyclist who does not own an automobile (or a pedestrian or motorcyclist who does own an automobile but who, like Heard, has not purchased no-fault insurance) and who also has not contributed "to the

---

[31] MCL 500.3113; MSA 24.13113.

fund from which benefits are to be paid." [*Id.,* p 146.]

The issue in *Heard* was the meaning of "involved," not "occupant." The meaning of a word depends on context. Dictionary definitions of a word often contain a number of different meanings.

We acknowledge that "occupant," when used in respect to the operation of a motor vehicle, generally means a person physically inside a vehicle. But the meaning of the terms "occupant" and "occupying" for purposes of insurance coverage, mandatory or not, is, as the foregoing review of authority in at least eighteen jurisdictions shows, broader and includes injuries suffered when an automobile journey is interrupted by an incident, such as a breakdown or need to service the insured vehicle or another vehicle, and the conduct of the injured person, within a reasonable geographic perimeter, is vehicle oriented.

The insurance industry appears to have generally accepted the judicial construction of "on" or "upon," and thus that injuries suffered after a breakdown, within a reasonable geographic perimeter, are within the insured risk if the conduct of the injured person is vehicle oriented. Automobile insurance policies generally continue to be written defining "occupying" as including injuries suffered "on" or "upon" the vehicle. The Legislature, in drafting and enacting the no-fault law, did not write on a clean slate, but in that context. Case-by-case resolution is unavoidable, even in a no-fault system.

IV

We would affirm the judgment of the Court of Appeals.

CAVANAGH, C.J., concurred with LEVIN, J.