*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JONATHAN JONES,

       Plaintiff-Appellant,

v

HOME-OWNERS INSURANCE COMPANY,
AMERICAN COUNTRY INSURANCE
COMPANY, and HARTFORD ACCIDENT &
INDEMNITY COMPANY,

       Defendants-Appellees,

and

SHARNETA HENDERSON,

       Defendant.

UNPUBLISHED
August 18, 2022

No. 355118
Wayne Circuit Court
LC No. 18-009868-NI

Before: RIORDAN, P.J., and BORRELLO and LETICA, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting summary disposition in favor of defendants Home-Owners Insurance Company ("Home-Owners"), American Country Insurance Company (ACIC), and Hartford Accident and Indemnity Company ("Hartford"), with respect to plaintiff's claims for uninsured or underinsured motorist benefits and first-party personal protection insurance (PIP) benefits under the no-fault act, MCL 500.3101 *et seq*. Although defendants disputed their priority to pay PIP benefits, the trial court did not decide the priority issue, but instead dismissed all claims on the basis of antifraud provisions in defendants' respective

policies.[1]  For the reasons set forth in this opinion, we affirm in part, reverse in part, and remand for further proceedings.

## I.  BASIC FACTS AND PROCEDURAL HISTORY

This case arises from a motor vehicle accident on October 28, 2017, in which plaintiff's vehicle was struck by a vehicle driven by defendant Sharneta Henderson in Detroit.  Plaintiff alleges that he was operating a 2009 Ford Crown Victoria and was stopped at a red light when Henderson's vehicle, traveling at a high rate of speed, drove through a red light and struck his vehicle.  The Crown Victoria was insured under a no-fault policy issued by ACIC, which listed Sons of Alice Transportation, LLC (Sons of Alice), as the named insured.  Plaintiff also alleged that he was covered under policies issued by Home-Owners and Hartford.  The Home-Owners policy was for plaintiff's personal vehicle, a 2008 Mercedes, and listed plaintiff as the named insured.  The Hartford policy was for a 1994 Chevrolet pickup truck and listed Jonathan Jones, d/b/a Jones Landscaping, as the named insured.

Plaintiff filed this action against all three insurers for recovery of no-fault PIP benefits and also uninsured or underinsured motorist benefits.  All three insurers filed motions for summary disposition, asserting that plaintiff's claims were barred by antifraud provisions in the respective policies.  Defendants argued that in plaintiff's deposition on December 18, 2018, plaintiff made material misrepresentations regarding his physical limitations, the extent to which he required attendant care and household replacement services, and the impact of his injuries on his ability to work.  In support of their allegations of fraud, defendants relied on surveillance evidence from February, June, and July of 2018, which contradicted plaintiff's statements regarding the scope of his injuries and pain, his physical limitations, and his inability to work.  Hartford also alleged that the trial court initially should determine which insurer was first in priority to pay PIP benefits under MCL 500.3114, and it disputed that it was first in priority.  Plaintiff denied the allegations of fraud.  Following a hearing, the trial court declined to address the priority dispute, but found that there was no genuine issue of material fact that plaintiff committed fraud by making material misrepresentations in his deposition and held that all three insurers were entitled to summary disposition on the basis of the antifraud provisions in the policies, and accordingly, dismissed all claims against the insurers.  This appeal followed.

## II.  SUMMARY DISPOSITION

Plaintiff alleges that the trial court erred by failing to determine the respective priority of each insurer under MCL 500.3114, and by determining that defendants were entitled to dismissal of plaintiff's claims for recovery of PIP benefits and uninsured or underinsured motorist benefits on the basis of the antifraud provisions in defendants' respective policies.  We agree that the trial court erred by failing to address the issue of the insurers' priority under MCL 500.3114.  We also hold that the trial court erred by dismissing plaintiff's claims for recovery of PIP benefits on the

---

[1] The trial court also granted a default judgment in favor of plaintiff with respect to defendant Sharneta Henderson, but that judgment is not at issue and Henderson is not a party to this appeal.

basis of plaintiff's alleged postprocurement fraud, but hold that plaintiff's claims for recovery of uninsured and underinsured motorist benefits were properly dismissed.

## A. STANDARDS OF REVIEW

Defendants moved for summary disposition under MCR 2.116(C)(10). In *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019), our Supreme Court explained:

> A motion under MCR 2.116(C)(10), on the other hand, tests the *factual sufficiency* of a claim. *Johnson v VanderKooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. *Id*. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Johnson*, 502 Mich at 761 (quotation marks, citation, and brackets omitted).

The priority of insurers, an issue of statutory construction, presents a question of law that this Court reviews de novo. *Titan Ins Co v American Country Ins Co*, 312 Mich App 291, 296; 876 NW2d 853 (2015). The insurance company has the burden of proving that a policy exclusion applies and that there is no genuine issue of material fact pertaining to the affirmative defense. *Shelton v Auto-Owners Ins Co*, 318 Mich App 648, 657; 899 NW2d 744 (2017).

## B. PRIORITY UNDER MCL 500.3114

Initially, we agree that the trial court erred by failing to address which insurer had priority to pay PIP benefits under MCL 500.3114.

In *Miclea v Cherokee Ins Co*, 333 Mich App 661, 667-668; 963 NW2d 665 (2020), this Court explained that while it is possible for more than one no-fault insurer to be responsible for PIP benefits to an individual, individuals are generally not able to seek double recovery under multiple no-fault policies unless the person's injuries exceed a policy's limits. Where the liability of multiple insurers are at issue, the priority of coverage is determined by MCL 500.3114(1). *Id*.; *Corwin v DaimlerChrysler Ins Co*, 296 Mich App 242, 254; 819 NW2d 68 (2012).

When the accident occurred on October 28, 2017, MCL 500.3114 provided, in pertinent part:

> (1) Except as provided in subsections (2), (3), and (5), a personal protection insurance policy described in [MCL 500.3101] applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident.

> (2) A person suffering accidental bodily injury while an operator or a passenger of a motor vehicle operated in the business of transporting passengers

-3-

shall receive the personal protection insurance benefits to which the person is entitled from the insurer of the motor vehicle . . . .

Thus, " 'the general rule is that one looks to a person's own insurer for no-fault benefits unless one of the statutory exceptions, [MCL 500.3114(2), (3), and (5)], applies.' " *Miclea*, 333 Mich App at 668, quoting *Parks v Detroit Auto Inter-Ins Exch*, 426 Mich 191, 202-203; 393 NW2d 833 (1986).

Plaintiff was the named insured under the Home-Owners policy, which listed the insured vehicle as a 2008 Mercedes E350. The ACIC policy listed Sons of Alice as the named insured, and listed the covered automobile under the policy as the 2009 Ford Crown Victoria that plaintiff was driving at the time of the accident. Finally, the Hartford policy listed the named insured as Jonathan Jones, d/b/a Jones Landscaping, and listed the covered vehicle as a 1994 Chevrolet pickup truck. In other portions of the Hartford policy, Jonathan Jones is named as the insured, without any reference to the landscaping business.

An individual may be entitled to PIP benefits mandated by the no-fault act even if the person is *not* a named insured under a no-fault policy, and such a person is not subject to the policy's antifraud provision. See *Shelton*, 318 Mich App at 652. Specifically, where the plaintiff was not a party to, or an insured, under the no-fault policy, the insurance company's obligation to pay PIP benefits arose by way of statute, rather than a contractual agreement. *Id.* Because the plaintiff's entitlement to no-fault benefits was governed by statute, MCL 500.3114(4)(a), the exclusionary provision in the defendant's no-fault policy did not apply and could not operate to bar the plaintiff's claims. *Id.* at 653-655.

In this case, plaintiff sought recovery of PIP benefits under three different policies, only one of which—the Home-Owners policy—clearly listed plaintiff as the named insured. The trial court apparently determined that it was unnecessary to decide which insurer had priority to pay PIP benefits, because it determined that plaintiff's fraud voided coverage for PIP benefits under all three policies. Under *Shelton*, however, to the extent that plaintiff was entitled to PIP benefits under a policy in which he was not a named insured—that is, his entitlement to benefits arose by way of statute rather than contractual agreement—the defendant insurer would not be able to rely on a fraud provision in its policy to avoid liability for PIP benefits. Therefore, it was necessary to determine which insurer had first priority for payment of PIP benefits. Accordingly, we reverse the trial court's order granting summary disposition and remand for a determination of the priority of the potential insurers, whether plaintiff is entitled to benefits under a policy, and whether the benefits arise by statute or contract.[2]

---

[2] We note that plaintiff testified regarding his transportation of passengers in the Crown Victoria involved in the accident for his daughter's business. Although his daughter was deposed, the transcript was apparently unavailable at the time of the dispositive motions. We presume that the parties will produce all relevant evidence to discern the nature of plaintiff's relationship to the business and his involvement in the business unless it is factually in dispute. See *Farmers Ins Exch v AAA of Mich*, 256 Mich App 691, 701-702; 671 NW2d 89 (2003).

## C. POSTPROCUREMENT FRAUD

Although the trial court concluded that summary disposition was appropriate because of the antifraud provisions of the insurance policies at issue, it failed to determine whether plaintiff was considered an insured for purposes of the policies and whether any alleged fraud occurred to induce the policies as opposed to postprocurement fraud and whether statutory or common-law defenses were available in light of the fraud at issue. See *Meemic Ins Co v Fortson*, 506 Mich 287, 305; 954 NW2d 115 (2020); *Williams v Farm Bureau Mut Ins Co of Mich*, 335 Mich App 574, 578, 580; 967 NW2d 869 (2021) (holding that if the alleged fraud did not influence or induce the policy's procurement, there is not a common-law basis to rescind a no-fault policy or avoid performance of obligations under the policy and antifraud provisions are invalid when they purport to apply to misrepresentations or fraud that occurs after the policy has been issued). Accordingly, we reverse the trial court's order and remand to address the availability of PIP benefits in light of these decisions.

## D. UNINSURED AND UNDERINSURED MOTORIST BENEFITS

Plaintiff's complaint also included claims for uninsured and underinsured motorist coverage. In *Rohlman v Hawkeye-Security Ins Co*, 442 Mich 520, 522; 502 NW2d 310 (1993), our Supreme Court recognized that while PIP benefits are mandated by the no-fault act, "uninsured motorist coverage is not." Thus, the insurance policy itself will govern the interpretation of its provisions regarding uninsured motorist coverage benefits, which are not required by statute. *Id*. at 525. In cases in which uninsured motorist benefits are at issue, the policy definitions are controlling. *Id*. at 534; see also *Dawson v Farm Bureau Mut Ins Co of Mich*, 293 Mich App 563, 568; 810 NW2d 106 (2011) (observing that underinsured motorist benefits are not required by the no-fault act and is considered optional coverage that is offered by some, but not all, automobile insurance companies in Michigan, and therefore, "limitations of underinsurance protection are governed by the insurance contract and the law pertaining to contracts"). Accordingly, because uninsured and underinsured motorist coverage is not mandated by the no-fault act, there is no prohibition against enforcement of the antifraud provisions in the defendant insurers' policies as applied to this coverage. Therefore, it is necessary to determine whether there are genuine issues of material fact regarding plaintiff's alleged fraud.

In *Titan Ins Co v Hyten*, 491 Mich 547, 555; 817 NW2d 562 (2012), our Supreme Court stated that, under Michigan law, there are "several interrelated but distinct common-law doctrines-loosely aggregated under the rubric of 'fraud[.]' " As pertinent to this appeal, one such common-law doctrine is actionable fraud, also known as fraudulent misrepresentation. To make a prima facie showing of fraudulent misrepresentation, the following elements must be satisfied:

> (1) That [plaintiff] made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by [his no-fault insurer]; (5) that [the no-fault insurer] acted in reliance upon it; and (6) that [it] thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery. [*Id*., quoting *Candler v Heigho*, 208 Mich 115, 121; 175 NW 141 (1919), overruled in

-5-

part on other grounds by *United States Fidelity & Guaranty Co v Black*, 412 Mich 99, 116 n 8; 13 [313] NW2d 77 (1981) (citation and quotation marks omitted).]

During his deposition, plaintiff described his physical limitations after the accident. He complained of a high level of pain, which he rated as a 9 out of 10, with 10 being the most severe, and said he planned to seek treatment at a pain clinic the following week. Plaintiff said he was still experiencing pain and numbness, even after participating in physical therapy, and that he was not able to leave his home without the assistance of a cane. Plaintiff also stated that he could not bend over, lift, and walk without difficulty because of his pain. Plaintiff's daughters still needed to help him get in and out of the bathtub, and as recently as November 2018, his daughters were assisting him with washing himself. Plaintiff said he sometimes still needed help getting dressed, depending on how he was feeling. More significantly, plaintiff testified that his lawn care business was not active during the spring and summer of 2018, and he could not do any physical labor himself during that time period. Plaintiff also explained that while he could bend over during the summer of 2018, he was not able to lift any items, he did not work in the preceding year because of his pain, and he could not recall working during the summer of 2018.

Accordingly, the evidence reflects that plaintiff made repeated statements at his December 2018 deposition regarding his pain and physical limitations following the accident, which he claimed affected his mobility and ability to lift items, and his ability to work. These statements were directly contradicted and established to be factually inaccurate by the surveillance evidence, which showed plaintiff moving freely without apparent pain and discomfort, and repeatedly lifting heavy items into a vehicle. Accordingly, we agree with the trial court that the evidence, specifically plaintiff's deposition testimony and the surveillance evidence, establishes that there is no genuine issue of material fact regarding whether plaintiff made false and material misrepresentations, knowing the representations to be false. *Titan*, 491 Mich at 555.

Plaintiff submits, however, that because his statements were made in the context of ongoing litigation, they may not be used to void coverage on the basis of fraud. In *Haydaw v Farm Bureau Ins Co*, 332 Mich App 719, 723; 957 NW2d 858 (2020), this Court considered whether statements made during the course of litigation were grounds to void a policy under the policy's fraud provision. Reviewing caselaw from other jurisdictions, this Court held that exclusionary fraud provisions "do not apply to statements made during the course of litigation." *Id*. at 723-726. This Court explained:

> False statements made during discovery do not provide grounds to void the policy because, by that time, the claim has been denied and the parties are adversaries in litigation. Once suit is brought, what is truth and what is false are matters for a jury or a judge acting as fact-finder. And if it can be shown that a party intentionally testified falsely, it is up to the court to determine what, if any, sanction is proper. Indeed, defendant is essentially seeking dismissal of plaintiff's claim on the basis of alleged discovery misconduct. Given that questions of credibility and intent are generally left to the trier of fact, "[i]t is . . . doubtful whether dismissal for intentionally false deposition testimony is ever appropriate." *Swain v Morse*, 332 Mich App 510, 524; 957 NW2d 396 (2020). In any event, it is up to the trial court to determine whether a drastic sanction such as dismissal is warranted for discovery misconduct, including untruthful deposition testimony. *To be clear, once an*

-6-

*insurer fails to timely pay a claim and suit is filed, the parties' duties of disclosure are governed by the rules of civil procedure, not the insurance policy*. [*Id*. at 726-727 (emphasis added).]

In *Haydaw*, this Court also explained that statements made during litigation, by their very nature, cannot satisfy the elements to void a no-fault policy on the basis of postloss fraud, because the alleged material misrepresentation could not have been made with the intention that an insurer would act on it. *Id*. at 728. Put another way, the Court acknowledged that when an insured makes statements during discovery, the insured does so with the intention that the trier of fact, *as opposed to the insurer*, will act on the statements, and that once litigation is initiated, an insurer only acts on the statements "for purposes of litigation strategy," rather than processing the claim under the terms of the policy. *Id*. The Court also noted that if it had held otherwise—that a fraud clause applies to statements made during the course of litigation—this would impact the first-breach rule in Michigan, which holds that if an insurer, by denying a claim, is the first to breach a contract, it may not thereafter defend on grounds that the plaintiff did not adhere to the terms of the contract. *Id*. at 729.

Subsequently, in *Fasho v Liberty Mut Ins Co*, 333 Mich App 612, 619; 963 NW2d 695 (2020), this Court clarified that *Haydaw* stood for the "unremarkable proposition" that an insurer is precluded from asserting that a claim was denied because of fraud that occurred following the commencement of litigation, and instead "the fraud must have occurred before the commencement of legal proceedings." In *Fasho*, the plaintiff sought PIP benefits, including wage-loss benefits. While the defendant insurer initially paid no-fault benefits, surveillance showed the plaintiff, the owner of an automotive repair shop, working without apparent limitations and conducting activities such as loading and unloading tires from his work van, carrying around heavy tools, and pushing vehicles. *Id*. at 614-615. After the defendant insurer terminated PIP benefits, the plaintiff filed suit and, during discovery, testified that he was unable to perform his work duties for several months after the accident up until the time of his deposition. *Id*. at 615. This Court explained:

> This recognizes the reality that a plaintiff-insured only commences suit after the defendant-insurer denies the plaintiff's claim and that the denial cannot possibly be based on an event that has not yet taken place. This does not mean that a defendant cannot rely on evidence of fraud obtained after litigation commences. It simply means that the evidence must relate to fraud that took place before the proceedings began. [*Id*. at 619.]

The Court in *Fasho*, *id*. at 621-622, drew a distinction between the facts in that case, and the facts in *Haydaw*, observing that the plaintiff in *Fasho* made misrepresentations before the litigation commenced. After holding that *Haydaw* was distinguishable, this Court affirmed the trial court's determination that reasonable minds could not differ regarding that the plaintiff made misrepresentations about his need for wage-loss benefits.

Applying these decisions to our facts, plaintiff's statements during his *deposition*, which took place after litigation commenced, cannot be used to implicate an antifraud provision in an insurance policy, and thus defendants could not rely on those statements to justify a denial of benefits. Under *Fasho*, however, fraudulent statements made *before* litigation is commenced

properly can be considered and can implicate an antifraud provision in an insurance policy. *Fasho*, 333 Mich App at 621-622.

In this case, plaintiff participated in a recorded interview with a Home-Owners representative on February 16, 2018, before this litigation was commenced. Plaintiff stated that the motor vehicle accident caused injuries to his right ankle, his knees and back, and that "basically I just be hurtin[g] all over." Plaintiff also stated that he injured his head after hitting it on the steering wheel. Plaintiff explained that his right ankle was sore and "sometimes it numb up and [I am] unable to move it sometimes." Plaintiff was experiencing numbness and sharp pain in his arms, pain in his neck up to the back of his head, and was having headaches "from time to time." Plaintiff was attending physical therapy for his back, leg, ankle, and arms at the time he gave his recorded statement, and he recounted that "[s]ometimes [physical therapy] you know, sometimes it helps." At the time of his recorded statement, plaintiff said he was not able to drive himself to and from appointments because of his pain and dizzy spells, and he relied on a transportation service to get him to and from appointments. Plaintiff was treating with a pain-management physician, an orthopedic surgeon, and a psychiatrist. Following the accident, plaintiff was not able to cook, clean, or wash dishes, and he required the assistance of his daughter eight hours a day for assistance with washing dishes, cleaning, cooking, massages, and shaving his head. His daughter would also accompany him in the bathroom when he was showering and bathing, and she assisted him with washing. His daughter would also assist plaintiff with dressing. Plaintiff had obtained a prescription for replacement services and attendant care, and said that he expected his daughter to be reimbursed for assisting him at home.

Viewing the evidence in a light most favorable to plaintiff, there is no genuine issue of material fact that plaintiff made material misrepresentations regarding his physical limitations, including his ability to conduct his daily activities of living, that were established by the surveillance evidence[3] to be factually incorrect and untruthful. Specifically, while plaintiff testified that he required the assistance of his family to wash dishes, clean, cook, get dressed, and shower and bathe, defendants presented surveillance evidence that showed plaintiff on February 21, 2018, "bent over into [his] vehicle for several moments, then proceed[ing] to carry two arms full of groceries to the residence" while moving in a "normal, fluid manner" without using any medical assistive aids or devices. Surveillance was also subsequently conducted on March 5, 2018, in which plaintiff was observed moving "in a normal, fluid manner" while using a cane as he walked toward his residence. The surveillance evidence is clear, uncontroverted, and undermines plaintiff's claim that his injuries hindered his ability to care for himself. The evidence was also such that reasonable minds could not disagree that plaintiff made the statements during his recorded interview knowing that they were false, and with the intent that a no-fault insurer would act on them to determine that he was entitled to coverage. *Titan*, 491 Mich at 555.

---

[3] In a separate issue, plaintiff contends that the surveillance evidence was inadmissible because defendant insurance companies declined to disclose the evidence citing privilege. This issue was never raised in the trial court, and we decline to address it. This Court's function is to serve as an error-correcting Court. See *Apex Laboratories Int'l Inc v City of Detroit*, 331 Mich app 1, 10; 951 NW2d 45 (2020). Because the issue was never briefed in the trial court, we will not rule on the merits of the issue for the first time on appeal.

Accordingly, the trial court did not err by dismissing plaintiff's claims for uninsured and underinsured motorist benefits on the basis of plaintiff's fraudulent misrepresentations.

In sum, we affirm the trial court's order granting defendants summary disposition with respect to plaintiff's claim for uninsured or underinsured motorist benefits, but reverse the order to the extent that it dismissed plaintiff's claim for PIP benefits and remand for further proceedings.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Stephen L. Borrello
/s/ Anica Letica