*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LEO PELLOT, Individually and as Next Friend of
AKP, Minor,

        Plaintiff-Appellant,

v

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Defendant-Appellee,

and

MICHIGAN AUTOMOBILE INSURANCE
PLACEMENT FACILITY, MICHIGAN
ASSIGNED CLAIMS PLAN, and CURRENTLY
UNNAMED ASSIGNEE OF THE MICHIGAN
ASSIGNED CLAIMS PLAN,

        Defendants.

UNPUBLISHED
December 12, 2025
9:59 AM

No. 372894
Wayne Circuit Court
LC No. 23-004629-NF

Before: ACKERMAN, P.J., and BORRELLO and LETICA, JJ.

PER CURIAM.

Plaintiff Leo Pellot was injured in an accident and seeks no-fault benefits from his one-time insurer, defendant State Farm Mutual Automobile Insurance Company. Defendant maintains that it canceled the policy before the accident occurred and that no coverage was in effect at that time. Because defendant did not notify plaintiff of that cancellation by mailing a written notice to the address last known to defendant, as required by MCL 500.3020, our caselaw holds that the cancellation was ineffective. We therefore reverse and remand for further proceedings consistent with this opinion.

-1-

# I. FACTS

On June 21, 2022, defendant issued plaintiff a renewal of his auto insurance effective July 14 of that year. At the time, plaintiff was living in Grand Rapids, but he testified that he moved to Wyoming that summer and arranged to have his mail forwarded to his new residence. In August, plaintiff contacted the office of his insurance agent, Kevin Curtis, and submitted an address change listing a residence on Whiting Street in Wyoming. According to Curtis, State Farm's corporate office takes three to four weeks to process address changes.

Meanwhile, plaintiff was having difficulty making timely payments. His payment due July 20 was not made until August 11, and his August 20 payment was made on August 30. He never made the required September 20 payment. On September 27, defendant mailed a cancellation notice to plaintiff's Grand Rapids address, warning that the policy would be canceled on October 12 if he did not pay. Curtis testified that text messages were sent to plaintiff on October 4 and 11 warning him that his policy was about to be canceled if he did not make a payment, although plaintiff testified that he never received these messages. Defendant's attorney also represented to the trial court that the mailed cancellation notice was never returned to defendant as undeliverable. Plaintiff made no further payment, and defendant considered his policy as canceled.

On November 30, 2022, plaintiff and his daughter were in a serious car accident in Wyoming. In April 2023, plaintiff filed suit—on his own behalf and as next friend of his daughter—in two courts. In Kent Circuit Court, he sued defendant and the driver who hit him, seeking third-party noneconomic damages under MCL 500.3135(1) from the driver and uninsured/underinsured-motorist benefits from defendant. In the instant case, filed in Wayne Circuit Court, he sought PIP benefits from defendant. In September 2023, the Kent Circuit Court granted summary disposition to defendant "as a result of the underlying claimants . . . having failed to issue payment for the insurance premiums for the policy at issue and Defendant having cancelled said policy resulting in Plaintiffs not having a policy of insurance with Defendant." The case against the other driver remained ongoing.

In the Wayne Circuit Court proceedings, defendant moved for summary disposition, which the trial court denied to allow discovery. After discovery, defendant renewed its motion for summary disposition in April 2024, arguing that the policy had been canceled and that the Kent Circuit Court decision constituted "law of the case" or otherwise collaterally estopped plaintiff from maintaining his claims against defendant. Plaintiff's response to the motion did not address collateral estoppel but argued that defendant failed to mail the cancellation notice to his last known address. The trial court emphasized that plaintiff knew that he had not paid his premiums and should have expected that his policy would be canceled. The court was also persuaded by defendant's argument that plaintiff had agreed to communicate electronically and therefore had notice that his policy was on the verge of cancellation. It granted defendant summary disposition, and this appeal followed.

# II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Defendant moved for summary

disposition under MCR 2.116(C)(10), under which the court considers deposition testimony and other documentary evidence, and may grant the motion if that evidence "show[s] that there is no genuine issue in respect to any material fact, and the moving party is entitled to judgment as a matter of law." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). This case also concerns the proper interpretation of MCL 500.3020, and we review questions of statutory interpretation de novo. *Ford Motor Co v Woodhaven*, 475 Mich 425, 438; 716 NW2d 247 (2006).

## III. ANALYSIS

Plaintiff argues that the cancellation that defendant issued was ineffective because it did not comply with MCL 500.3020. We agree.

Under MCL 500.3020(1), "[a] policy of casualty insurance, . . . including all classes of motor vehicle coverage, shall not be issued or delivered in this state" unless it contains certain provisions. One such provision is that "the policy may be canceled at any time by the insurer by mailing to the insured at the insured's address last known to the insurer or an authorized agent of the insurer . . . a not less than 10 days' written notice of cancellation." MCL 500.3020(1)(b). By its text, then, the statute requires that all car insurance policies provide that they can be canceled if the insurer *mails* to the insured at the *address last known* to either the insurer or the insurer's agent a 10-day notice of cancellation.

There is no genuine issue of material fact that this requirement was not satisfied. Defendant's internal logbook entry that plaintiff produced at Curtis's deposition shows that on August 24, 2022, plaintiff's address on file was updated to his Wyoming residence. As a result, the address last known to either defendant or its authorized agent (Curtis) was plaintiff's Wyoming address. Nevertheless, the September 27 cancellation notice was mailed to his former Grand Rapids residence. The question, then, is what effect this noncompliant notice has on the case.

The issue is controlled by *Causin v Auto Club Ins Ass'n*, 211 Mich App 369; 536 NW2d 247 (1995). There, the plaintiff fell behind on premium payments. On July 8, 1988, the insurer's Dearborn office generated a cancellation notice, but that same day the plaintiff submitted a change-of-address form to the insurer's Flint office. The Dearborn office mailed the cancellation notice to the plaintiff's former address on July 11. Although the plaintiff later obtained actual notice of the cancellation, this Court held that the mailing was defective and the cancellation ineffective. *Id.* at 372-373. The Court explained that "[t]he statute plainly indicates that the insurer is obliged to mail the notice of cancellation to the most current address known to either the insurer or its authorized agent" and that "defects in mailing are not cured by the insured's receipt of the cancellation notice." *Id*.

The same reasoning applies here. Defendant's records reflected plaintiff's new address when the cancellation notice was mailed. The fact that it may have taken several weeks for corporate processing is immaterial; *Causin* held that once the insurer or its agent has knowledge of a new address, subsequent mailings to the former address do not satisfy the statute. Indeed, the facts here are even less favorable to defendant than in *Causin*, where the insurer's error could be attributed to pre-Internet mail delays. Nor does it matter whether plaintiff received actual notice of cancellation or "should have" realized that nonpayment would result in termination. Under

*Causin*, a defective mailing renders the cancellation ineffective per se, regardless of receipt or foreseeability.

Defendant contends that the parties mutually agreed to electronic communications, including text-message notices, and that nothing in MCL 500.3020 expressly prohibits such an arrangement. We disagree. The statute provides that a policy "shall not be issued or delivered in this state" unless it contains the mailing provision. If the parties could later contract around this requirement, they would, in effect, create a new insurance policy that omits a term the Legislature has deemed mandatory. Because "it is to be presumed that the parties contracted with the intention of executing a policy satisfying the statutory requirements," the policy is read "as though the statutes were a part of the contract." *Rohlman v Hawkeye-Security Ins Co*, 442 Mich 520, 525 n 3; 502 NW2d 310 (1993). The mailing requirement is therefore an unalterable term of the insurance policy.

Finally, defendant renews its argument that plaintiff should be collaterally estopped from maintaining these claims based on the Kent Circuit Court's earlier summary disposition ruling and offers this as an alternative basis for affirmance. Although this issue was raised in the trial court and is therefore nominally preserved for our review, see *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020), we decline to resolve it at this juncture. Under the test set forth in *Monat v State Farm Ins Co*, 469 Mich 679, 682-684 & n 2; 677 NW2d 843 (2004), collateral estoppel is a fact-intensive inquiry involving several essentially equitable considerations. While it is unclear why plaintiff pursued parallel actions in two different judicial circuits arising from the same accident against the same defendant, it is equally unclear why defendant failed to raise this procedural irregularity earlier or whether the Kent Circuit Court's interlocutory dismissal of defendant constituted a "valid and final judgment" under *Monat*. Our decision does not preclude defendant from renewing this argument in the trial court and, in doing so, more fully developing the underlying factual record.

The judgment of the trial court is therefore reversed, and the matter is remanded for further proceedings consistent with this opinion.

/s/ Matthew S. Ackerman
/s/ Stephen L. Borrello
/s/ Anica Letica